UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| **JOHN JOSEPH KEIPER, JR.**<br>    **LA. DOC #520534**<br>**VS.**<br><br>**MOREHOUSE DETENTION**<br>**CENTER, ET AL.** | **CIVIL ACTION NO. 3:15-cv-1840**<br><br>**SECTION P**<br><br>**JUDGE ROBERT G. JAMES**<br><br>**MAGISTRATE JUDGE KAREN L. HAYES** |

REPORT AND RECOMMENDATION

*Pro se* plaintiff John Joseph Keiper, Jr., proceeding *in forma pauperis*, filed the instant civil rights complaint pursuant to 42 U.S.C. §1983 on June 8, 2015. Plaintiff is an inmate in the custody of the Louisiana Department of Corrections (DOC). He is incarcerated at the Morehouse Parish Detention Center (MPDC) where he is employed in a work-release program at D-G Foods. He complained that the defendants withheld too much of his salary and overcharged him for supplies; he also complained about conditions of confinement. In an amended complaint he claimed that he was denied appropriate medical care for an on-the-job injury that occurred in September, 2015. On November 24, 2015, he filed a motion for a temporary restraining order claiming for the first time that he is not being properly treated for Hepatitis. He also requested appointment of counsel. Plaintiff sued Sheriff Mike Tubbs and Warden Isaac Brown[1] seeking a transfer to another facility and repayment of the wages he claims were erroneously withheld. In his subsequent pleadings he prayed for a transfer to a facility which would treat his Hepatitis, or for an order directing the defendants to provide such treatment.

---

[1] In his original complaint plaintiff also sued the MPDC and the Morehouse Parish Sheriff's Office. In a subsequent pleading he dismissed these non-juridical entities from the suit. [See Doc. 12]

This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the Court. For the following reasons it is recommended that his complaint be **DISMISSED WITH PREJUDICE** as frivolous.

### *Statement of the Case*

*1. Original Complaint [Docs. 1 and 4]*

In his original complaint plaintiff claimed that MPDC officials withheld too much of his salary, that they overcharged him for supplies, that he was provided an inadequate diet which resulted in the loss of over 35 lbs., and that he was not permitted adequate outdoor recreation on his days off. He prayed for the refund of his misappropriated salary and fees and for a transfer to another facility. On September 21, 2015, the undersigned completed an initial review of the pleadings and directed plaintiff to amend his complaint to cure various deficiencies that were noted. Specifically, plaintiff was directed to provide "... a description of the <u>alleged injury</u> sustained as a result of the alleged violation." [Doc. 11]

*2. Amended Complaint [Doc. 12]*

On October 2, 2015, plaintiff amended his complaint. As noted above, he removed MPDC and the Morehouse Sheriff's Department from the suit. He added no additional factual support for his wage claim or his conditions of confinement claim, and with respect to the latter, he alleged no injury resulting from the alleged violation. He prayed again for a transfer to another work-release facility.

*3. Supplemental Complaint [Doc. 13]*

On October 13, 2015, plaintiff submitted another pro se pleading raising additional issues

for the first time. He claimed that his work-release assignment at D-G required him to load and unload trailers, move trailers from the yard to the loading dock, and dump chicken remains. He claimed that on September 25, 2015, he had completed a task and was returning to the building when he dropped his gloves and glasses under a trailer. He "climbed" under the trailer to retrieve the items and when he stood up he struck his head and "was knocked out." He claimed that he regained consciousness when his supervisor called him and shone a flashlight in his face. Plaintiff was ordered to return to work. He then advised his supervisor that he was injured, but his claim was met with scepticism by his supervisor and the human resources director and he was accused of sleeping on the job and suspended from work for 3 days. Plaintiff was not taken to a hospital and was sent back to the detention center where a deputy inquired if plaintiff was "high or drunk." Plaintiff filled out an emergency sick call but he was not taken to a physician; instead he was returned to his cell and then transferred to lock-down and thereafter written up on a prison rules violation charge.

Plaintiff provided a copy of the Disciplinary Report which charged "simple escape." According to the charges, plaintiff "was discovered under a trailer asleep by his supervisor... [who] had been looking for the offender for over an hour." [Doc. 13-1]

### 4. Motion for Appointment of Counsel [Doc. 14]

On November 24, 2015, plaintiff filed a motion requesting appointment of counsel alleging in support thereof various deficiencies in the MPDC law library.

### 5. Motion for TRO [Doc. 15]

On the same day, plaintiff filed a motion for preliminary injunction and temporary restraining order. For the first time plaintiff claimed that he is not being adequately treated for

3

Hepatitis or "HCV". He prayed for an order directing the defendants to provide treatment or to transfer him to a facility where treatment could be received. He did not allege the nature of the treatment sought or the name of a facility that would provide such treatment.

*Law and Analysis*

*1. Screening*

Plaintiff is a prisoner who has been permitted to proceed *in forma pauperis.* As a prisoner seeking redress from an officer or employee of a governmental entity, his complaint is subject to preliminary screening pursuant to 28 U.S.C. § 1915A. *See Martin v. Scott,* 156 F.3d 578, 579-80 (5th Cir.1998) (*per curiam*). Because he is proceeding *in forma pauperis,* his complaint is also subject to screening under § 1915(e)(2). Both § 1915(e)(2) (B) and § 1915A(b) provide for *sua sponte* dismissal of the complaint, or any portion thereof, if the Court finds it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief.

A complaint is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams,* 490 U.S. 319, 325 (1989). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." *Id.* at 327. A complaint fails to state a claim upon which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007); *accord Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).

*2. Wages Claim*

Plaintiff has alleged that a portion of his wages have been illegally taken from him. However, a claim for random deprivation of personal property, is not cognizable under §1983. In

*Parratt v. Taylor*, 451 U.S. 527, 544, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), a prisoner claimed that prison officials had negligently deprived him of his personal property without due process of law. The Supreme Court held that the prisoner was "deprived" of his property within the meaning of the Due Process Clause of the Fourteenth Amendment, but the Court ruled that the State's post-deprivation tort remedy provided all the process that was due. *Id.,* 451 U.S. at 536-37, 101 S.Ct. at 1913.

The Due Process Clause does not embrace tort law concepts. Although a litigant may be afforded a remedy under state tort law for deprivation of property, the Fourteenth Amendment does not afford such a remedy. *Daniels v. Williams,* 474 U.S. 327, 335, 106 S.Ct. 662, 667, 88 L.Ed.2d 662 (1986). Even in instances where intentional deprivation occurs where an adequate state post-deprivation remedy is available, the Due Process Clause is not implicated, so long as the deprivation was "random." *Hudson v. Palmer*, 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984); *Davis v. Bayless*, 70 F.3d 367 (5th Cir. 1995); *Murphy v. Collins*, 26 F.3d 541 (5th Cir. 1994).

This principle (known as the *Parratt/Hudson* doctrine) rests on the premise that because the state is unable to predict random and unauthorized conduct, pre-deprivation remedies are unfeasible. *Davis*, 70 F.3d at 375, citing, *Zinermon v. Burch*, 494 U.S. 113, 128-32, 110 S.Ct. 975, 985-86, 1098 L.Ed.2d 100 (1990) (distinguishing between random unauthorized conduct and a deprivation which results from predictable conduct authorized by a State). To the extent that plaintiff has alleged that he was the victim of a random and unauthorized deprivation of his property, he has failed to state a claim for which relief may be granted.

*3. Conditions of Confinement*

Plaintiff has also raised a general claim concerning the conditions of confinement. Complaints about prison conditions are analyzed under the Eighth Amendment. While the Eighth Amendment does not prohibit punishment it does prohibit cruel and unusual punishment including the unnecessary and wanton infliction of pain. *See Rhodes v. Chapman*, 452 U.S. 337, 347, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981). Additionally, while the Eighth Amendment does not mandate comfortable prisons, it does not permit inhumane ones. *Harper v. Showers*, 174 F.3d 716, 719 (5th Cir.1999).

"For conditions of confinement to rise to the level of an Eighth Amendment violation, they must be "cruel and unusual" under contemporary standards. *Rhodes v. Chapman*, 452 U.S. 337, 347, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981). To the extent that such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society. *Id.* However, when the restrictions of confinement rise to a level that results in physical torture, it can result in pain without penological purpose constituting cruel and unusual punishment under the Eighth Amendment. *Id.*" *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir. 1998). Plaintiff's complaint simply does not rise to the level of Eighth Amendment violations. He was specifically ordered "... to demonstrate some harm or injury resulting from his exposure to the complained of conditions..." but he did not. His conditions of confinement claim are frivolous.

*4. Workers Compensation*

Plaintiff also implies that he is entitled to compensation for the "injury" he allegedly received in the course and scope of his work-release job. Inmates who participate in Work-

6

Release programs are not deemed to be employees of the state, but are considered the employees of their private employer and are entitled to workers' compensation benefits. See *Rogers v. Louisiana Dept. of Corrections*, 2008-43,000 (La.App. 2 Cir. 4/30/08), 982 So.2d 252, 256, *writ denied*, 2008-1178 (La. 9/19/2008), 992 So.2d 931. Under Louisiana law, worker's compensation provides the <u>exclusive remedy for employees</u>, such as plaintiff, who were injured in the course of employment. *Harris v. Wal-Mart Stores, Inc.*, 205 F.3d 847 (5th Cir. 2000); see also La. R.S.23:1031; La. R.S.23:1032(A)(1)(a). Nevertheless, to the extent that plaintiff seeks "workers compensation" in this action, he is not entitled to such relief in this forum. He must pursue such claims as provided under Louisiana law. See La. R.S.23:1031 *et seq*. In short, plaintiff's claims must be dismissed for failing to state a claim for which relief may be granted.

**5. Prison Discipline**

Plaintiff also complains about the prison disciplinary write-up and his subsequent confinement to lock-down. By virtue of a valid criminal conviction and subsequent legal confinement, a prisoner loses his expectation of liberty. *See Meachum v. Fano*, 427 U.S. 215, 224, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976). Assuming for the sake of argument that plaintiff was falsely accused of the disciplinary rules violation and thereafter sanctioned with a brief period of confinement in lock-down, his complaint still fails to state a claim for which relief might be granted. "The Due Process Clause does not protect every change in the conditions of confinement having a substantial adverse impact on the prisoner." *Sandin v. Conner*, 515 U.S. 472, 478, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995). The federal jurisprudence holds, that while the states may under certain circumstances create rights that implicate Due Process, such rights are limited to freedom from restraints that impose "atypical and significant hardship on the

inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484.

Thus, relying on *Sandin*, the Fifth Circuit has found that "'administrative segregation, without more, simply does not constitute a deprivation of a constitutionally cognizable liberty interest.'" *Pichardo v. Kinker*, 73 F.3d 612, 613 (5th Cir.1996) (quoting *Luken v. Scott*, 71 F.3d 192, 193 (1995)) (rejecting claim that confinement in administrative segregation violated prisoner's due process rights). The Fifth Circuit has also rejected a state prisoner's claim that the additional restrictions imposed on those in administrative segregation violated his due process rights. *Martin v. Scott*, 156 F.3d 578, 580 (5th Cir.1998) (*per curiam*). Therein the court stated "'"absent extraordinary circumstances, administrative segregation as such, being an incident to the ordinary life of a prisoner, will never be a ground for constitutional claim because it simply does not constitute a deprivation of a constitutionally cognizable liberty interest." ' *Id.* at 580 (quotation omitted).

In other words, when a prisoner is lawfully incarcerated, he loses many of the rights and privileges that most citizens enjoy. *Madison v. Parker*, 104 F.3d 765, 767 (5th Cir.1997). Thus, "... mere[ ] changes in the conditions of [ ] confinement ... do not implicate due process concerns." *See Madison*, 104 F.3d at 768; see also *Harper v. Showers*, 174 F.3d 716, 718 (5th Cir.1999) ("Inmates have no protectable property or liberty interest in custodial classifications.").

Therefore, even if plaintiff lost privileges or was confined for a period of time in administrative segregation as a result of the defendants' allegedly false charges, these punishments were not "atypical" and thus his complaint fails to state a claim for which relief might be granted.

**6. Medical Care [Docs. 13 and 15]**

Plaintiff complains that he was denied prompt and appropriate medical care for an injury he claims to have received on September 25, 2015, when he bumped his head on a trailer. In a subsequent pleading he claimed that he suffers from "HCV" and is being denied appropriate medical care.

Plaintiff's medical care claims also arise under the Eighth Amendment's prohibition against cruel and unusual punishment. As with the conditions of confinement claim plaintiff's medical care claims amount to an Eighth Amendment violation only if he can establish deliberate indifference resulting in substantial harm. *Easter v. Powell*, 467 F.3d 459, 463 (5th Cir. 2006). The facts underlying a claim of deliberate indifference must clearly establish the serious medical need in question and the alleged indifference of the prison officials. *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985).

"A serious medical need is one for which treatment has been recommended or for which the need is so apparent that even laymen would recognize that care is required." *Gobert v. Caldwell*, 463 F.3d 339, 345 n.12 (5th Cir. 2006). "Deliberate indifference is an extremely high standard to meet." *Domino v. Texas Dep't of Crim. Justice*, 239 F.3d 752, 756 (5th Cir. 2001). "[T]he plaintiff must show that the officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Id*. (internal quotation marks and citation omitted). "[M]ere negligence, neglect, or medical malpractice" do not constitute deliberate indifference. *Varnado*, 920 F.2d at 321. Even "gross negligence" does not establish deliberate indifference. *Hernandez v. Tex. Dep't of Prot. and Reg. Servs.*, 380 F.3d 872, 882 (5th Cir. 2004).

9

With regard to the alleged head injury he sustained, he offers no facts to support the existence of such injury. Indeed, the relevant documentary evidence strongly suggests that no such injury occurred and that plaintiff was in fact asleep on the job. Likewise, plaintiff offers no facts to establish that he suffers from "HCV" or any other serious medical condition. Indeed, his motion for TRO is suspect given the fact that plaintiff's pleadings, which have been pending since June 2015, made no mention of the alleged condition until his most recent filing.

Plaintiff's medical care claims, and his request for injunctive relief are manifestly frivolous.

### 7. *Appointment of Counsel [Doc. 14]*

Finally, plaintiff seeks appointment of counsel. Congress has not specifically authorized courts to appoint counsel for plaintiffs proceeding under 42 U.S.C. §1983. "Generally no right to counsel exists in §1983 actions [but] appointment of counsel should be made as authorized by 28 U.S.C. §1915 where 'exceptional circumstances' are present." *Robbins v. Maggio*, 750 F.2d. 405 (5th Cir. 1985). Pursuant to 28 U.S.C. §1915(e)(1), federal courts are given the power to request that an attorney represent an indigent plaintiff. In the case of *Mallard v. United States District Court for the Southern District*, 490 U.S. 296, 301-302, 109 S.Ct. 1814, 1818, 104 L.Ed.2d 318 (1989) the United States Supreme Court held that federal courts can only request that an attorney represent a person unable to employ counsel because federal courts are not empowered under 28 U.S.C. §1915(e)(1) to make compulsory appointments.

Although courts can request that an attorney represent an indigent plaintiff, the court is not required to make this request in the absence of "exceptional circumstances." *See Ulmer v. Chancellor*, 691 F.2d. 209, 212 (5th Cir. 1982) and *Jackson v. Cain*, 864 F.2d. 1235, 1242 (5th

Cir. 1989). No precise definition of "exceptional circumstances" is available, but the United States Courts of Appeal have provided a litany of factors for lower courts to consider in determining whether the plaintiff is entitled to have the court request that counsel assist him in his suit. It is proper for the court to consider the following factors: (a) the type and complexity of the case; (b) the plaintiff's ability to adequately present and investigate his case; (c) the presence of evidence which largely consists of conflicting testimony so as to require skill in presentation of evidence and cross-examination; and (d) the likelihood that appointment will benefit the petitioner, the court, and the defendants by "shortening the trial and assisting in just determination." *See Parker v. Carpenter*, 978 F.2d. 190 (5th Cir. 1992), citing *Murphy v. Kellar*, 950 F.2d. at 293, n.14; *see also Ulmer*, 691 F.2d. at 213, and *Jackson*, 864 F.2d. at 1242. Additionally, a court may consider whether a plaintiff has demonstrated the inability to secure private counsel on his own behalf. *See Jackson*, 864 F.2d. at 1242; *Ulmer*, 691 F.2d. at 213. Plaintiff is not excused from trying to procure counsel for himself. Plaintiff has not demonstrated that he is unable to secure representation from an attorney or *pro bono* organization.

Plaintiff has managed to file his original complaint setting forth his cause of action against the named defendants. No special legal knowledge is required of plaintiff herein. Plaintiff's claims are not atypical of those often asserted in civil rights litigation and are not complex. At this stage of the proceedings he need not be versed in the law so long as he can recite the facts and his demands with sufficient clarity, and that he has done so far.

Accordingly, plaintiff's request for appointment of counsel should be denied as the circumstances presented herein are not "exceptional" so as to warrant the appointment of counsel.

*Orders and Recommendation*

Therefore, considering the foregoing,

Plaintiff's Motion to Appoint Counsel [Doc. 14] is **DENIED**; and, likewise, plaintiff's Motion for Temporary Restraining Order and/or Preliminary Injunction [Doc. 15] is also **DENIED**; and,

**IT IS RECOMMENDED THAT** plaintiff's civil rights complaint, his amended complaints, and his supplemental complaint [Doc. 1, 4, 12, and 13] be **DISMISSED WITH PREJUDICE** as frivolous for failing to state a claim for which relief may be granted in accordance with the provisions of 28 U.S.C. §§ 1915 and 1915A.

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.** *See, Douglass v. United Services Automobile Association*, **79 F.3d 1415 (5th Cir. 1996).**

In Chambers, Monroe, Louisiana, December 2, 2015.

_____
**KAREN L. HAYES**
**UNITED STATES MAGISTRATE JUDGE**

**KAREN L. HAYES**